**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Gary PALMER, Defendant–Appellee.**

**No. 93–1685.**

United States Court of Appeals, Fifth Circuit.

Aug. 24, 1994.

Karen Ledbetter Taylor, Sr. Trial Atty., Richard H. Stephens, U.S. Dept. of Justice, Dallas, TX, for appellant.

Jay Ethington, Dallas, TX, for appellee.

Before KING, JOLLY and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The United States appeals Gary Palmer's sentence following his plea of guilty to one count of conspiracy to commit bank fraud in violation of 18 U.S.C. § 371. Because the district court erred in concluding that the bank suffered no loss, we vacate the sentence and remand.

## I.

Gary Palmer was the president of Liberty National Bank of Dallas, Texas, and the principal shareholder of Liberty Bancshares, Inc., the holding company that owned Liberty National Bank. Palmer was also the sole shareholder of the Texas Acceptance Corporation ("TAC"), the affiliate of Liberty National Bank.[1]

In 1987, Liberty National Bank needed additional capital. Palmer and the other officers used the bank's affiliate, TAC, to purchase real estate loan notes at a discounted value of $8,986,253. They then sold the notes to Liberty National Bank for the full face value of $10,886,732. Liberty National Bank listed the notes on its books and records at the face value. However, the accounting regulations concerning affiliated transactions required that the value of the notes be based on the actual cost to TAC, not the cost to Liberty National Bank.

The difference between the price Liberty National Bank paid for the notes and TAC's discounted price was ostensibly to be used to make a capital injection into Liberty National Bank. Instead, a substantial portion of the excess funds was used to pay debts of Liberty Bancshares, Inc., and others.[2]

In 1993, Palmer pled guilty to one count of bank fraud. The presentence report ("PSR") stated that Palmer's action had caused a loss of $1,900,000. Therefore, the report recommended a nine-level increase in Palmer's offense level for causing a loss of more than $1,000,000 but less than $2,000,000.[3] Palmer objected to the increase and contended that the Bank suffered no loss because the three entities—Liberty National Bank, Liberty Bancshares, Inc. and TAC—were a single organization with aligned interests that shared the $1.9 million.

The Government countered that the Bank and Liberty Bancshares were separate entities and that a reduction of Liberty Bancshares' indebtedness did not confer any benefit on the Bank. According to the Government, the principal benefit was to the holding company and the conspirators who owned the holding company.

At sentencing, the court heard extensive testimony from Jo Waller, Esq., a former employee of the Texas Securities Board and the Federal Reserve Bank of Dallas. Waller, relying on the fact that Liberty National Bank and its holding company had aligned interests, testified that there was no loss to Liberty National Bank or to Liberty Bancshares, Inc. as a result of Palmer's transactions.

The district court rejected the PSR's calculation of the offense level and refused to assess any points for financial loss. Instead, the court determined that the offense level was six and sentenced Palmer to five years of

---

1. See 12 U.S.C. § 221a(b)(2) which defines "affiliate" to include a corporation owned by a majority shareholder of the bank.

2. Palmer does not contest the Government's statements as to the disposition of the $1.9 million profit: $536,623 was used to pay principal and interest on the holding company's debt; $185,518 was used to pay interest on debentures issued by the holding company; $40,000 was used to pay off a loan from Liberty National Bank for Palmer's friend, W.W. White; $45,781 was used to pay off one loan and $102,994 to pay off another loan in the name of Palmer's business associate, David Cox; and $52,470 was used by TAC to purchase real estate from the bank. Ap-

proximately $400,000 was returned to the bank's capital account. The Government auditor was unable to determine precisely how the remainder (in excess of $530,000) was spent, but he saw no indication that it was returned to the bank.

3. The 1987 Sentencing Guideline § 2F1.1(b)(1)(J) provided for a nine-level increase in offense level for a fraud involving between $1,000,000 and $2,000,000. The 1987 Sentencing Guideline Manual was used in calculating Palmer's sentence because the 1993 loss table would have subjected him to increased punishment.

probation. The Government filed a timely notice of appeal.

## II.

The Government argues that the district court clearly erred in finding that the transaction resulted in no loss to the bank. The Government contends that Palmer caused Liberty National Bank to pay TAC $1.9 million more than the value of the notes, and that only $400,000 of this excess was returned to the Bank's capital account. Therefore, according to the Government, the Bank lost at least $1.5 million.

■ This court reviews a district court's application of the sentencing guidelines *de novo* and the district court's findings of fact for clear error. *United States v. Sanders,* 942 F.2d 894, 897 (5th Cir.1991). The calculation of the amount of loss is a factual finding. *United States v. Wimbish,* 980 F.2d 312, 313 (5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2365, 124 L.Ed.2d 272 (1993).

■ The district court concluded that the insured bank sustained no loss because it considered Liberty National Bank, Liberty Bancshares, and TAC as one entity. This led the district court to further conclude that the Bank suffered no loss even though the holding company used some of the Bank's funds to extinguish indebtedness of the holding company and for other purposes which did not improve the financial health of the bank.

We agree with the Government that the district court started from a faulty premise. A benefit to a holding company is not necessarily a benefit to the subsidiary. A holding company can manipulate property and credit of a controlled corporation to benefit itself while damaging the subsidiary: "To deplete the assets of a subsidiary without consideration for the sole benefit of the holding company, with resulting loss to the existing general creditors, is an abuse of corporate powers." Fletcher's Cyclopedia of Corporations § 2822 (1st ed. 1989).

For example, in *FDIC v. Sea Pines Co.,* 692 F.2d 973 (4th Cir.1982), *cert. denied,* 461 U.S. 928, 103 S.Ct. 2089, 77 L.Ed.2d 299 (1983), the parent company mortgaged the property of the subsidiary in order to pay off loans of the parent. The Fourth Circuit held that this transaction "was in no way beneficial to the subsidiary" and justified piercing the corporate veil in favor of creditors of the parent company. *Id.* at 977.

The situation here is similar to *Sea Pines.* A large part of the bank's $1.9 million profit was used to pay off the holding company's loans. Liberty National Bank had no liability for the holding company's loans and thus paying off Liberty Bancshares' indebtedness did not provide a benefit to the bank.[4] If Liberty Bancshares, Inc., the holding company, had defaulted on its loan payments, creditors might have acquired its assets, including the stock of Liberty National Bank. Had this occurred, however, the Bank would have had new owners, but the Bank's own balance sheet would not have been affected.

In sum, the Bank did not benefit from the use of these funds by Liberty Bancshares and others to reduce their indebtedness. Rather, the holding company and its shareholders, such as Palmer, enjoyed the benefit of these payments. Palmer and other Liberty Bancshares shareholders also received a huge indirect benefit when Liberty Bancshare's stock loan was paid because they were personal guarantors of that loan.

The district court therefore clearly erred in determining that the bank suffered no loss. The loss to Liberty National Bank includes that part of the $1.9 million profit that did not benefit the bank, including the funds used to pay indebtedness of Liberty Bancshares, Inc., and the debts of Palmer's friends and business associates, David Cox and W.W. White.

We therefore vacate Palmer's sentence and remand this case to the district court to determine the amount of Liberty National

---

4. A benefit to a subsidiary of a bank, on the other hand, would benefit the parent bank. Generally, if profits are funneled to a subsidiary, then the benefit to the subsidiary increases the stock values held by the parent.

Bank's loss consistent with this opinion and for resentencing in light of that loss.

VACATED and REMANDED.